UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CLEMENCIA GIL,

                            Plaintiff,

        -against-

WESTERN EXPRESS, INC. and
ROBERT E. SMITH,

                          Defendants.
------------------------------------------------------X

**OPINION AND ORDER**

15 Civ. 9611 (JCM)

Plaintiff Clemencia Gil ("Plaintiff") commenced this diversity action against Defendant

Western Express, Inc. ("Defendant Western Express") and Defendant Robert E. Smith

("Defendant Smith") (jointly "Defendants") to recover for personal injuries allegedly sustained

as a result of a motor vehicle accident with a tractor-trailer owned and operated by Defendants.

Before the Court is Defendants' Motion for Summary Judgment (the "Motion").[1] (Docket Nos.

34, 37[2]). Plaintiff opposed the Motion, (Docket No. 39), and Defendants replied by affirmation,

(Docket No. 38).[3] For the reasons that follow, the Motion is granted in part and denied in part.

## I. BACKGROUND

The following facts are gathered from Defendants' statement filed pursuant to Rule 56.1

of the Local Civil Rules of the United States District Courts for the Southern and Eastern

Districts of New York ("Rule 56.1"), (Docket No. 35), the parties' supporting documents and

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket No. 18).

[2] The Court notes that Defendants erroneously titled Docket No. 37 "Memorandum of Law in Support to Defendants' Motion for Holding a Daubert Hearing." It is clear to the Court that this document is actually the Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

[3] The parties' briefs are hereinafter cited as "Defs. Br.," "Pl. Opp." and "Defs. Rep." (Docket Nos. 37, 39, 38). All page number citations refer to the page number assigned upon electronic filing unless otherwise noted.

exhibits, and the pleadings submitted by the parties in support of their contentions. The facts are construed in the light most favorable to Plaintiff as the party opposing summary judgment.

## A. The Accident and Plaintiff's Subsequent Treatment

At approximately 9:00 a.m. on September 11, 2014, Plaintiff was driving her 2015 Toyota Corolla southbound across the Tappan Zee Bridge. (Gil Tr.[4] at 10-13). After traversing the bridge and driving through the tollbooth in Tarrytown, New York, a tractor-trailer owned by Defendant Western Express and operated by Defendant Smith struck the right side of Plaintiff's vehicle (the "Accident"). (*Id.* at 13, 17-32; Pl. Ex.[5] 9).

After the Accident, Plaintiff and Defendant Smith pulled their vehicles to the side of the road. (Gil Tr. at 33-34). Shortly thereafter, Plaintiff's husband arrived at the scene and drove her to St. John's Hospital. (*Id.* at 46). There, she complained of neck, back and stomach pains. (Pl. Ex. 1 at 5). The emergency room physician administered a CT Scan of Plaintiff's cervical spine and abdomen. (*Id.* at 8-9). After the physician reviewed the results, Plaintiff testified that she was informed she had "no injury." (Gil Tr. at 53-54; Pl. Ex. 1 at 9). Plaintiff then left the hospital and, as directed, took Tylenol as needed to alleviate her pain. (Gil Tr. at 56).

On September 15, 2014, Plaintiff sought medical treatment at the Grand Concourse Clinic (the "Clinic"), where she made initial complaints of: (i) back, neck, knee and left-shoulder pains; (ii) headaches; and (iii) feeling tired, weak and dizzy. (Pl. Ex. 2 at 7; Gil Tr. at 59). Dr. Mitchell Zeren ("Dr. Zeren"), a chiropractor at the Clinic, conducted a physical examination of

---

[4] Refers to the transcript of Plaintiff's deposition taken on April 27, 2016. (Defs. Ex. J). Page number citations to the transcript refer to the original pagination.

[5] Refers to the exhibits submitted with the Affirmation of John A. Maher in Opposition to the Defendants' Motion for Summary Judgment. (Docket No. 31). Page number citations to Plaintiff's exhibits refer to the pagination assigned upon electronic filing.

Plaintiff. (Pl. Ex. 2 at 7-8).[6] He found inflammation in the suboccipital region and the cervical spine. (*Id.* at 7). He also observed joint tenderness; rotation of the vertebrae in the cervical spine; posterior muscle spasm; spasm of the trapezius and supraspinatus muscles; and severe paraspinal muscle spasms predominantly in the thoracolumbar region. (Pl. Ex. 2 at 7). Dr. Zeren conducted several chiropractic tests, including: (i) a Kemp's Test, which produced lower back pain bilaterally; (ii) a Cervical Compression Test, which came out positive; (iii) a Jackson's Compression Test, which produced left-sided paresthesia; (iv) a Spurling's Test, which had positive results; (v) a Soto-Hall Test, which produced neck and back pain; (vi) a Fabere-Patrick Test, which was positive on the left; and (vii) a McMurray's Test, which was positive on the left knee producing medial pain. (*Id.*). Dr. Zeren also noted that the "SLR [Straight Leg Raising] test in the seated and supine position does produce paresthesias into both legs." (*Id.*). Finally, Dr. Zeren tested Plaintiff's range of motion in, *inter alia*, her cervical spine and compared the results against average ranges of motion, as follows:

| Cervical Spine | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 40 | 60 | 33.3% |
| Extension | 30 | 50 | 40.0% |
| Left Rotation | 50 | 80 | 37.5% |
| Right Rotation | 60 | 80 | 25.0% |
| Left Lateral Rotation | 20 | 45 | 55.5% |
| Right Lateral Rotation | 25 | 45 | 44.4% |

---

[6] As a chiropractor, Dr. Zeren possesses a Doctor of Chiropractic ("D.C.") degree. Courts in this circuit have debated the weight to be accorded the testimony of a chiropractor, as opposed to those with a medical degree ("M.D."). *See, e.g., Diaz v. Shalala*, 59 F.3d 307, 312-14 (2d Cir. 1995) (discussing, in the social security context, conflicting opinions on whether chiropractors are an acceptable source of medical information); *Barnable v. First Fortis Life Ins. Co.*, 44 F. Supp. 2d 196, 204 (E.D.N.Y. 1999) ("A chiropractor is not a medical doctor and a chiropractic opinion is not accorded the same weight and respect as a formal medical opinion."). However, in the context of the New York No-Fault Statute, a chiropractor's affidavit can constitute sufficient evidence to establish a "serious injury." *See, e.g., Clervoix v. Edwards*, 781 N.Y.S.2d 690 (2d Dep't 2004) (chiropractor's affidavit specifying permanent, decreased range of motion, along with MRI evidence of herniated discs held sufficient to defeat summary judgment).

(*Id.* at 7-8). Ultimately, Dr. Zeren concluded that Plaintiff "suffered from derangement of the cervical and lumbar spines with disc displacement and radiculopathy which has caused pain, and significant and meaningful restrictions in motion to the involved body parts; as well as posttraumatic headaches . . . ." (*Id.* at 3). Based upon his examination, Dr. Zeren opined that these injuries were causally related to the Accident. (*Id.* at 4).

On October 22, 2014, Dr. Aric Hausknecht ("Dr. Hausknecht") conducted a neurological examination of Plaintiff and reviewed, *inter alia*, an MRI of Plaintiff's cervical spine taken on October 1, 2014. (Pl. Ex. 3 at 4). His findings revealed that Plaintiff suffered from disc pathology at "multiple levels in the cervical and thoracic region" and he recommended that "interventional pain management and/or spinal surgery should be considered." (*Id.* at 5). Dr. Hausknecht also conducted a nerve conduction velocity and electromyography test ("EMG"), which revealed evidence of radiculopathy. (*Id.* at 6). Dr. Hausknecht concluded that Plaintiff's condition was causally related to the Accident. (*Id.* at 5).

Plaintiff also saw her primary care physician, Dr. Maria Diaz ("Dr. Diaz"), sometime in October 2014. (Gil Tr. at 62). Plaintiff testified that she explained to Dr. Diaz that she had been in an accident, and so Dr. Diaz prescribed Naprosyn, which Plaintiff obtained and refilled "two or three" times. (*Id.* at 62-64). However, Dr. Diaz did not administer any other care for injuries allegedly sustained in the Accident because she was aware that Plaintiff was seeking treatment at the Clinic. (*Id.* at 64).

After visiting Dr. Diaz, Plaintiff returned to Dr. Zeren for a follow-up chiropractic examination on February 28, 2015. (Pl. Ex. 2 at 5). Dr. Zeren noted that Plaintiff was "not doing well" and "remain[ed] extremely symptomatic." (*Id.*). He ultimately diagnosed Plaintiff with "cervical derangement with C5-6, C6-7 disc herniation and C3-4, C4-5 disc bulging . . . thoracic

derangement with T7-8 and T8-9 disc herniations . . . traumatic myalgia and myofasciitis . . . [and] traumatic injury to the left shoulder." (*Id.* at 6).  Dr. Zeren also re-tested Plaintiff's range of motion in her cervical spine and lumbar spine, which again fell short of the normal average range of motion:

| Cervical Spine | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 40 | 60 | 33.3% |
| Extension | 35 | 50 | 30.0% |
| Left Rotation | 50 | 80 | 37.5% |
| Right Rotation | 60 | 80 | 25.0% |
| Left Lateral Rotation | 20 | 45 | 55.5% |
| Right Lateral Rotation | 25 | 45 | 44.4% |

*Id.* at 5-6).  As in his initial report, Dr. Zeren concluded that these injuries were causally related to the Accident. (*Id.* at 6).

Plaintiff subsequently received treatment from Dr. Orsuville Cabatu ("Dr. Cabatu") at Electrodiagnostic and Physical Medicine on March 27, 2015. (Pl. Ex. 4 at 2).  Upon his physical examination of Plaintiff, Dr. Cabatu observed spasms in the cervical and lumbar paraspinal muscles, and tenderness in the left trapezius, left scapula and lumbar paraspinal muscles. (*Id.* at 3-4).  He also conducted cervical-spine and left-shoulder range-of-motion tests, which yielded the following results:

| Cervical Spine | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 40 | 50 | 20.0% |
| Extension | 35 | 60 | 41.7% |
| Left Rotation | 50 | 80 | 37.5% |
| Right Rotation | 60 | 80 | 25.0% |
| Left Lateral Rotation | 40 | 45 | 11.1% |
| Right Lateral Rotation | 25 | 45 | 44.4% |

| Left Shoulder | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 125 | 180 | 30.6% |
| Abduction | 120 | 180 | 33.3% |

(*Id.* at 4-5). Dr. Cabatu diagnosed Plaintiff with sustained left cervical radiculopathy; disc herniation with impingement; disc bulging with impingement; cervical, lumbar and left-knee strains; and tension headaches. (*Id.* at 5). At the close of his examination, Dr. Cabatu prescribed Plaintiff physical therapy for her back, neck and shoulders two or three times per week.[7] (*Id.* at 5). He also directed Plaintiff to have MRIs taken of her left shoulder and lumbar spine. (*Id.* at 5-6). Pursuant to Dr. Cabatu's instruction, Plaintiff went for an MRI of her lumbar spine on April 24, 2015. (Pl. Ex. 7). The results demonstrated bulging discs and left lateral herniation with impingement. (*Id.*). An MRI of Plaintiff's left shoulder taken on August 14, 2015 demonstrated extensive partial rotator cuff tear, a subchondral cyst and joint effusion. (Pl. Ex. 6).

Plaintiff visited Dr. Cabatu for a follow-up examination on December 22, 2015, at which time Dr. Cabatu opined that Plaintiff "remained symptomatic." (Pl. Ex. 4 at 6-7). He also re-tested Plaintiff's range of motion in her cervical spine and left shoulder:

| Cervical Spine | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 40 | 50 | 20.0% |
| Extension | 40 | 60 | 33.3% |
| Left Rotation | 50 | 80 | 37.5% |
| Right Rotation | 60 | 80 | 25.0% |
| Left Lateral Rotation | 40 | 45 | 11.1% |
| Right Lateral Rotation | 30 | 45 | 33.3% |

---

[7] Plaintiff was still receiving physical therapy from Dr. Cabatu's office and from Dr. Anson Moise at Electrodiagnostic and Physical Medicine at the time of her deposition on April 27, 2016. (Gil Tr. at 76-79). In total, Plaintiff received twenty sessions of conservative physical therapy at Dr. Cabatu's office and forty-nine sessions at Electrodiagnostic and Physical Medicine. (Pl. Ex. 4 at 5).

| Left Shoulder | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 125 | 180 | 30.6% |
| Internal Rotation | 50 | 90 | 44.4% |

(*Id.* at 7). At another follow-up examination on December 13, 2016, Dr. Cabatu again tested

Plaintiff's range of motion in her cervical spine and left shoulder, and also tested Plaintiff's

range of motion in her left knee:

| Cervical Spine | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 40 | 50 | 20.0% |
| Extension | 50 | 60 | 16.7% |
| Left Rotation | 50 | 80 | 37.5% |
| Right Rotation | 60 | 80 | 25.0% |
| Left Lateral Rotation | 40 | 45 | 11.1% |
| Right Lateral Rotation | 35 | 45 | 22.2% |

| Left Shoulder | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 125 | 180 | 30.6% |
| Abduction | 120 | 180 | 33.3% |
| External Rotation | 80 | 90 | 11.1% |
| Internal Rotation | 50 | 90 | 44.4% |

| Left Knee | | | |
|---|---|---|---|
| | Plaintiff's Average Range of Motion | Normal Average Range of Motion | Percent Loss |
| Flexion | 110 | 135 | 18.5% |

(*Id.* at 8, 10). With respect to each of Dr. Cabatu's findings at the initial, December 22, 2015,

and December 13, 2016 examinations, he concluded, to a reasonable degree of medical certainty,

that the "[A]ccident . . . was the competent producing cause of [Plaintiff's] injuries and

symptoms." (*Id.* at 9).

Plaintiff was also examined by Dr. Anson M. Moise ("Dr. Moise"), a pain management

doctor at Electrodiagnostic and Physical Medicine, on April 22, 2016. (Pl. Ex. 8). Dr. Moise

diagnosed Plaintiff with cervical radiculopathy and, thus, administered an interlaminar cervical epidural steroid injection. (*Id.*). Dr. Moise reported that Plaintiff's cervical radiculopathy remained after the procedure was complete. (*Id.*).

Plaintiff testified that, as a result of the Accident, she could not work for a period of approximately three weeks. (Gil Tr. at 99-100, 103). After returning to work, Plaintiff noted persisting limitations as a result of the Accident, including: (i) difficulty sleeping due to back pain; (ii) inability to drive long distances; (iii) inability to lift heavy items, including toys she uses for her job; (iv) inability to walk up stairs; and (v) difficulty completing routine household chores. (*Id.* at 105-107).

## B. Independent Medical Examinations

On May 27, 2016, Plaintiff appeared for an independent orthopedic examination by Dr. Sean Lager ("Dr. Lager") to address her complaints of neck, back, left-shoulder and left-knee pains. (Defs. Ex.[8] 11). Regarding Plaintiff's left-knee pain, Dr. Lager's examination revealed that Plaintiff had "medial-sided tenderness and no lateral tenderness on the left" and, thus, he concluded that Plaintiff's "subjective complaints do not correlate with objective findings." (*Id.* at 9). With respect to Plaintiff's left shoulder, Dr. Lager reviewed the MRI taken on August 14, 2015 and concluded that the reported partial tear of Plaintiff's supraspinatus tendon could either be degenerative, and not related to the Accident, or the result of trauma. (*Id.*). Further, his review of Plaintiff's cervical-spine MRI taken on October 1, 2014 and the EMG done on October 22, 2014 revealed "some neck and shoulder stiffness." (*Id.* at 9-10). Dr. Lager's examination, however, did not reveal "significant objective findings that correlated with the MRI report

---

[8] Refers to the exhibits submitted with the Declaration of Keith A. Raven in Support of Defendants' Motion for Summary Judgment. (Docket No. 36). Page number citations to Defendants' exhibits refer to the pagination assigned upon electronic filing.

findings" and showed that Plaintiff exhibited "no objective evidence of cervical radiculopathy." (*Id.* at 10).

Finally, Dr. Lager found that the results of Plaintiff's lumbar MRI taken on April 24, 2015, which showed left lateral herniation with impingement and a bulging disc, did not correlate with his finding that Plaintiff is "neurologically intact with no objective evidence of lumbar radiculopathy." (Defs. Ex. 11 at 10). Ultimately, Dr. Lager concluded that there were no objective findings to support complaints of orthopedic disability, and that there was no permanent injury. (*Id.*). Based upon his examination, Dr. Lager diagnosed Plaintiff with resolved cervical and lumbar strains, resolved left-knee strain and resolved left-shoulder strain. (*Id.* at 9).

On June 26, 2016, Plaintiff appeared for an independent neurological examination by Dr. Rene Elkin ("Dr. Elkin"). (Defs. Ex. 12). Dr. Elkin's examination of Plaintiff's neck revealed "full range of motion." (*Id.* at 16). While Plaintiff reported pain in her neck, Dr. Elkin found "no pain to palpation of the cervical spine or cervical musculature . . . [and] no palpable cervical muscle spasm." (*Id.*). The examination of Plaintiff's lower back "revealed full range of motion." (*Id.*). While Plaintiff described pain in the lumbar musculature, Dr. Elkin found "no palpable lumbar muscle spasm." (*Id.*). Lastly, Dr. Elkin's examination of Plaintiff's shoulders and knees "revealed full range of motion." (*Id.*). Ultimately, Dr. Elkin found "no objective findings on the neurological physical examination for any structural neurological injury attributable to the [A]ccident." (*Id.* at 16-17). She also found no evidence of neurological permanency or disability. (*Id.*).

Finally, Dr. Marc Katzman ("Dr. Katzman") performed an independent radiological interpretation of: (i) the MRI of Plaintiff's left shoulder taken on August 14, 2014; (ii) the X-ray

of Plaintiff's left shoulder taken on March 30, 2015; (iii) the X-ray study of Plaintiff's left shoulder from April 24, 2015; and (iv) the MRI of Plaintiff's lumbar spine taken on April 24, 2015. (Defs. Ex. 13). Regarding the left-shoulder MRI taken on August 14, 2014, Dr. Katzman concluded that it "reveals no evidence of recent post-traumatic injury to the left shoulder joint," rather only "mild chronic degeneration of the rotator cuff in the setting of chronic internal impingement." (*Id.* at 8). He further reported that "all internal derangements of the left shoulder appear chronic, degenerative, and pre-existing. . . ." (*Id.*). After reviewing the left-shoulder X-ray from March 30, 2015, Dr. Katzman opined that it "reveals no evidence of recent post-traumatic injury." (*Id.*). Regarding the left-shoulder X-ray from April 24, 2015, Dr. Katzman concluded that it "reveals no evidence of recent posttraumatic injury . . . [and that] there is pre-existing chronic degenerative arthropathy of the acromioclavicular joint." (*Id.* at 10). Lastly, with respect to the MRI of Plaintiff's lumbar spine taken on April 24, 2015, Dr. Katzman concluded that he saw no evidence of recent traumatic injury, but rather identified "multilevel degenerative disc disease of the lumbar spine" that is "clearly chronic." (*Id.* at 11). He noted that "the disc bulges at L1-2, L2-3, L3-4, L-5 and L5-S1 are by definition degenerative and non-traumatic." (*Id.*).

## C. Plaintiff's Prior Injuries and Medical Procedures

In 2002, Plaintiff was involved in a motor vehicle accident that resulted in back injuries. (Gil Tr. at 81-82). After that accident, Plaintiff was treated at the St. John's Hospital emergency room, received follow-up care at a clinic for approximately three months and remained under the care of her physician for approximately one year. (*Id.* at 85-88, 111-112). Additionally, sometime in 2003 or 2004, Plaintiff had breast reduction surgery in the Dominican Republic to alleviate back pains. (*Id.* at 91-92).

## II. APPLICABLE LAW

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583 (LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (citation omitted).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000) (citations omitted). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The

non-moving party 'is required to go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249-50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B. New York's No-Fault Insurance Framework

Under New York law, an individual may not bring a lawsuit to recover non-economic damages arising out of negligent use of a properly-insured vehicle "except in the case of a serious injury." N.Y. Ins. Law § 5104(a). An injury is "serious" if it falls into one of nine statutorily-defined categories:

> [D]eath; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss or use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

The purpose of New York's No-Fault Insurance Law is "'to weed out frivolous claims and limit recovery to significant injuries.'" *Bewry v. Colonial Freight Sys.*, No. 01 Civ. 5634 (JCF), 2002 WL 31834434, at *2 (S.D.N.Y. Dec. 17, 2002) (quoting *Dufel v. Green*, 84 N.Y.2d 795, 798 (1995)). For this reason, whether the facts of a case would support a jury's finding that a plaintiff has suffered a serious injury is a "threshold question" for the court to decide. *See Yong Qin Luo v. Mikel*, 625 F.3d 772, 776-77 (2d Cir. 2010). A defendant moving for summary

judgment carries the initial burden of establishing a prima facie case that the plaintiff did not sustain a serious injury. *See id.* at 777. If the defendant carries his burden, the plaintiff must then demonstrate that there is sufficient admissible evidence that she did in fact sustain such an injury. *See id.* Subjective complaints of pain alone cannot defeat a defendant's summary judgment motion -- the plaintiff must offer objective medical evidence of a serious injury. *See id.*; *see also Munoz v. Hollingsworth*, 795 N.Y.S.2d 20, 21 (1st Dep't 2005). This evidence may be in the form of sworn affidavits, reports by physicians, or sworn medical test records, including MRI and X-ray results. *See Yonq Qin Luo*, 625 F.3d at 777; *Garner v. Tong*, 811 N.Y.S.2d 400, 400 (1st Dep't 2006); *see also Fountain v. Sullivan*, 690 N.Y.S.2d 341, 342 (3d Dep't 1999).

## 1. Permanent Consequential Limitation and Significant Limitation Categories

"To establish a claim under the permanent consequential limitation or significant limitation of use categories, the medical evidence submitted by plaintiff must contain objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system." *Clark v. Basco*, 83 A.D.3d 1136, 1139 (3d Dep't 2011) (internal quotations omitted). "[T]o raise a triable issue of fact, plaintiff['s] claim that [her] range of motion is limited must be sustained by objective medical findings that are 'based on a recent examination.'" *Bent v. Jackson*, 15 A.D.3d 46, 48 (2005) (quoting *Grossman v. Wright*, 268 A.D.2d 79, 84 (2d Dep't 2000)). "[B]ulging or herniated discs are not, in and of themselves, evidence of serious injury without competent objective evidence of the limitations and duration of the disc injury." *DeJesus v. Paulino*, 61 A.D.3d 605, 608 (1st Dep't 2009) (citing *Pommells v. Perez*, 4 N.Y.3d 566, 574 (2005); *Toulson v. Young Han Pae*, 13 A.D.3d 317, 319 (2004)).

Furthermore, to prove that she suffered a significant limitation, a plaintiff must demonstrate "that she suffered from 'something more than a . . . minor, mild or slight limitation of use.'" *Ventra v. United States*, 121 F. Supp. 2d 326, 333 (S.D.N.Y. 2000) (alteration in original) (quoting *Licari v. Elliott*, 57 N.Y.2d 230, 236 (1982)). The limitation must be significant in degree and duration, *see Gualtieri v. Farina*, 283 F. Supp. 2d 917, 925 (S.D.N.Y. 2003), and "[t]he significance of the limitation must be supported by credible medical evidence and must be objectively measured and quantified," *Ventra*, 121 F. Supp. 2d at 333-34.

"Tests such as MRIs, x-rays, and CT-scans are objective and credible medical evidence of a serious injury because they do not rely on the patient's complaints of pain." *DeJesus v. Rafael*, No. 00 Civ. 5137 (SWK), 2003 WL 21305358, at *2 (S.D.N.Y. June 5, 2003) (citations omitted). Other objective evidence, such as straight-leg-raise tests, and observations of spasms by a treating physician, can also be sufficient to withstand a summary-judgment motion. *See id.*; *see also Adetunji v. U-Haul Co. of Wis., Inc.*, 250 A.D.2d 483, 483 (1st Dep't 1998). "[A]n expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system." *Hodder v. United States*, 328 F. Supp. 2d 335, 349 (E.D.N.Y. 2004) (quotation omitted).

## 2. 90/180 Category

To demonstrate a serious injury under the 90/180 category, a plaintiff must "submit competent medical evidence to support her claim that she was unable to perform substantially all of her daily activities for not less than 90 of the 180 days immediately following the accident, as a result of the subject accident." *Escoto v. United States*, 848 F. Supp. 2d 315, 330 (E.D.N.Y. 2012) (citing, *inter alia*, *Kearse v. N.Y.C. Transit Auth.*, 16 A.D.3d 45, 52 (2d Dep't 2005)); *see*

*also Sainte-Aime v. Ho*, 274 A.D.2d 569, 570 (2d Dep't 2000). To sustain a claim in this category, a "plaintiff must prove that she was 'curtailed from performing [her] usual activities to a great extent rather than some slight curtailment.'" *Gualtieri v. Farina*, 283 F. Supp. 2d 917, 924-25 (S.D.N.Y. 2003) (alteration in original) (quoting *Licari*, 57 N.Y.2d at 236).

A "plaintiff's allegations that her injuries [fall] within the 90/180 category must be substantiated by objective medical proof[.]" *Escoto*, 848 F. Supp. 2d at 330; *accord Gualtieri*, 283 F. Supp. 2d at 925. Self-serving statements by a plaintiff are insufficient to establish a serious injury under the 90/180 category. *See Gualtieri*, 283 F. Supp. 2d at 925; *see also Escoto*, 848 F. Supp. 2d at 330.

## III. DISCUSSION

### A. Defendants' Prima Facie Case

In support of the Motion, Defendants submit three expert reports to establish a prima facie case that Plaintiff has not suffered a serious injury as defined by New York Insurance Law § 5102(d). *See generally supra* Section I.B. First, they attach the results of an independent orthopedic examination performed by Dr. Lager to address Plaintiff's complaints of neck pain, back pain, left shoulder pain and left knee pain. (Defs. Ex. 11). Dr. Lager's examination revealed that there were no objective findings to support complaints of orthopedic disability, and that there was no evidence of a permanent injury. (*Id.* at 10). Based upon his examination, Dr. Lager diagnosed Plaintiff with resolved cervical and lumbar strains, resolved left knee strain and resolved left shoulder strain. (*Id.* at 9). Second, Defendants include the results from Dr. Elkin's independent neurological examination. (Defs. Ex. 12). Dr. Elkin found "no objective findings on the neurological physical examination for any structural neurological injury attributable to the [A]ccident." (*Id.* at 18-19). She also found no evidence of neurological permanency or

-15-

disability. (*Id.* at 18-19). Third, Defendants submit Dr. Katzman's independent radiological interpretations. (Defs. Ex. 13). After reviewing the results of Plaintiff's various MRIs and X-rays, Dr. Katzman concluded that any injuries observed were the result of chronic and degenerative issues, and not caused by the Accident. (*Id.* at 8; *see also supra* Section I.B).

The Court finds that the opinions set forth in these expert reports are sufficient to establish a prima facie case that Plaintiff's injuries do not fall within the no-fault statute's definition of "serious injury." *See Brusso v. Imbeault*, 699 F. Supp. 2d 567, 576-77 (W.D.N.Y. Mar. 16, 2010) (stating physician's independent medical examination report is sufficient to satisfy defendant's initial burden to show there was no serious injury within meaning of statute). Specifically, the independent medical examinations by Dr. Lager, Dr. Elkin and Dr. Katzman affirm, with competent medical evidence, that Plaintiff did not suffer a permanent consequential limitation or a significant limitation as a result of the Accident. *See Tenzen v. Hirschfeld*, No. 10 Civ. 50, 2011 WL 6034462, at *4 (E.D.N.Y. Dec. 5, 2011) ("A prima facie showing is satisfied when an examining physician affirms that no serious injury exists."); *see also Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992).

Additionally, the Court finds that Defendants have provided sufficient evidence to demonstrate their prima facie case that Plaintiff's alleged back injury was not causally related to the Accident, (Defs. Br. at 9-10), but rather due to either chronic degenerative issues, Plaintiff's 2002 automobile accident, and/or breast reduction surgery. Defendants have propounded persuasive medical evidence, supported by independent medical examinations, of pre-existing chronic degenerative conditions in Plaintiff's back and, based on a review of Plaintiff's MRIs, no evidence of a post-traumatic injury to Plaintiff's back. (*See, e.g.*, Defs. Ex. M); *see also Pommells*, 4 N.Y.3d at 580 ("In this case, with [defendant's] persuasive evidence that plaintiff's

-16-

alleged pain and injuries were related to a preexisting condition, plaintiff had the burden to come forward with evidence addressing defendant's claimed lack of causation.").

Defendants have also established a prima facie case that Plaintiff was not unable to attend to her usual activities for a period in excess of 90 days during the first 180 days following the Accident. This 90-day requirement "is to be construed literally" and is a necessary condition to bringing a claim. *Tsveitel v. Geoghegan,* No. 05 Civ. 5721 (DGT), 2009 WL 2182379, at *4 (E.D.N.Y. July 21, 2009) (citing *Licari,* 57 N.Y.2d at 236). Here, Plaintiff claims to have only missed approximately three weeks of work following the Accident. (Gil Tr. at 99-100, 103). Moreover, even when she returned, Plaintiff noted that she continued to "do the same things" at work that she did prior to the Accident. (*Id.* at 104). Plaintiff also alleges -- based solely on self-serving testimony -- that she could not complete certain household chores, such as laundry; could not lift certain objects at work; and had difficulty driving long distances for at least 90 of 180 days after the Accident. (*Id.* at 105-107). As Defendants note, however, these activities do "not constitute substantially all of the Plaintiff's normal activities for 90 of the first 180 days after the Accident. Indeed, rather than limiting h[er] normal activities to a great extent it appears to the Court that the Plaintiff's injuries only caused h[er] to suffer a slight curtailment to h[er] usual activities." *Evans v. United States*, 978 F. Supp. 2d 148, 166 (E.D.N.Y. 2013) (internal quotations omitted); *see, e.g.*, *Licari*, 57 N.Y.2d at 238 (twenty-four day absence from work, followed by resumption of plaintiff's usual taxi driving schedule did not satisfy statute); *Szabo v. XYZ, Two Way Radio Taxi Assoc.*, 267 A.D.2d 134, 135 (1999) (two week absence from work, coupled with limitations with respect to plaintiff's detailed computer work and her inability to hold small things the way she used to, did not meet statute); *Hernandez v. Cerda*, 271 A.D.2d 569, 570 (2d Dep't 2000) (two week absence from work, followed by return to full-time

-17-

employment, did not satisfy statute); *Pierre v. Nanton*, 719 N.Y.S.2d 706, 707 (2d Dep't 2001) ("Although the plaintiff claimed that he did not work for almost four months after the accident [as a result of disc herniation], he was not ordered by a doctor to stay home. Accordingly, [he] . . . failed to establish that he sustained a medically-determined injury.").

## B. Plaintiff's Rebuttal

Since Defendants have offered medical evidence that, if credited, establishes the Accident did not cause any serious injury, the burden shifts to Plaintiff. To refute Defendants' showing and establish that she sustained a serious injury, Plaintiff must submit "'objective proof,' such as 'an expert's designation of a numeric percentage of a plaintiff's loss of range of motion' . . . or '[a]n expert's *qualitative* assessment of a plaintiff's condition . . . , provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system.'" *Suarez v. Abe*, 4 A.D.3d 288, 289 (1st Dep't 2004) (quoting *Toure*, 98 N.Y.2d at 350) (emphasis in original). "Such an 'objective basis' for the expert's assessment may be provided by, for example, competent interpretations of MRI or CT scans." *Id.* Plaintiff's expert must also address any other intervening factors which may interrupt the causal chain between the Accident and claimed injury, such as a pre-existing condition. *See, e.g.*, *Style v. Joseph*, 820 N.Y.S.2d 26, 28 (1st Dep't 2006) ("Where, as here, plaintiff sustained injuries as a result of accidents or incidents that preceded the accident giving rise to the litigation, plaintiff's expert must adequately address how plaintiff's current medical problems, in light of her past medical history, are causally related to the subject accident.") (citing cases).

Plaintiff alleges that she sustained serious injuries to her: (i) back; (ii) neck; (iii) knee; and (iv) left shoulder. (Pl. Opp.). Plaintiff contends that there is sufficient objective medical

evidence in the record to satisfy the threshold burden with respect to three separate categories of section 5102(d): (i) permanent consequential limitation of use of a body organ or member; (ii) significant limitation of use of a body function or system; and (iii) a medically determined nonpermanent injury which prevented plaintiff from performing substantially all of her customary daily activities for 90 of the first 180 days following the Accident. (*Id.*). The first two categories of serious injury, permanent consequential or significant limitation of use, "are often analyzed together." *Sanchez v. Travelers Cos., Inc.*, 658 F. Supp. 2d 499, 510 (W.D.N.Y. 2009). For these two categories, the New York Court of Appeals has held that "whether a limitation of use or function is 'significant' or 'consequential' . . . relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Id.* (quoting *Toure*, 98 N.Y.2d at 353). "Similarly, a serious injury under the 90/180 category also must be supported by objective medical evidence in admissible form establishing that the injury caused the alleged limitations in daily activity during the relevant time period." *Kavulak v. Laimis Juodzevicius, A.V. Inc.*, 994 F. Supp. 2d 337, 349 (W.D.N.Y. 2014).

## 1. Permanent Consequential Limitation and Significant Limitation Categories

### i. Back Injury

Plaintiff contends that the Accident resulted in a "serious injury" to her back. Because Plaintiff was (i) involved in an earlier motor vehicle accident that resulted in back injuries, (Gil Tr. at 81-82), and (ii) had breast reduction surgery due to back pains, (*id.* at 91-92), she must demonstrate a causal connection between the Accident and her alleged back injuries.

In *Franchini v. Palmieri*, 763 N.Y.S.2d 381 (3d Dep't 2003), *aff'd* 1 N.Y.3d 536 (2003), the plaintiff commenced a negligence action to recover for injuries sustained in a motor vehicle

accident. *Id.* at 382. The defendant, moving for summary judgment, argued that the plaintiff's

alleged injuries were similar to injuries he had actually suffered prior to the subject accident. *Id.*

In response, the plaintiff relied upon an affidavit from a chiropractor, who had begun treating the

plaintiff immediately following the accident. *Id.* at 383.

Despite this, the Third Department affirmed the lower court's decision to grant the

defendant's motion for summary judgment on the ground that the chiropractor failed to

adequately address the plaintiff's pre-existing injuries. Specifically, although the chiropractor

stated that the plaintiff's injuries were "separate and distinct from any pre-existing injuries that

[she] may have had," the court found this to be insufficient to defeat the defendant's motion for

summary judgment, because the chiropractor "failed to explain his opinion that the preexisting

conditions had resolved [themselves]." *Id.*

On appeal, the New York Court of Appeals ("Court of Appeals") affirmed summary

judgment in favor of the defendant. *Franchini*, 1 N.Y.3d at 537. In making its decision, the

Court of Appeals explained that the "[p]laintiff's submissions were insufficient to defeat

summary judgment because her experts failed to adequately address [the] plaintiff's preexisting

back condition and other medical problems, and did not provide any foundation or objective

medical basis supporting the conclusions they reached." *Id.*; *see also Carter v. Full Serv., Inc.*,

815 N.Y.S.2d 41, 43 (1st Dep't 2006) ("In order to recover damages for non-economic loss

related to a personal injury allegedly sustained in a motor vehicle accident, a plaintiff is required

to present competent, non-conclusory expert evidence sufficient to support a finding . . . that the

injury was proximately caused by the accident at issue . . . . [I]n the absence of an explanation of

the basis for concluding that the injury was caused by the subject accident, and not by other

possible causes evidenced in the record, an expert's conclusion that plaintiff's condition is

causally related to the subject accident is mere speculation insufficient to support a finding that such a causal link exists.") (citations and internal quotation marks omitted); *Montgomery v. Pena*, 798 N.Y.S.2d 17, 18 (1st Dep't 2005) (granting the defendant's motion for summary judgment in part because the plaintiff's physician failed to mention the prior injuries or pre-existing conditions).

Similarly, here, none of the evidence that Plaintiff offers sufficiently addresses whether her pre-existing back injuries were resolved before the Accident. The conclusory and unsupported statements from Plaintiff's medical providers that her injuries from the "motor vehicle accident 12 to 13 years ago . . . had resolved," (Pl. Ex. 2 at 7), and their findings that the injuries are "causally related to the [A]ccident of September 11, 2014," (*See, e.g.*, Pl. Exs. 2, 3, 4), are insufficient to establish causation.[9] *See Carter*, 815 N.Y.S.2d at 43; *Dabiere v. Yager*, 748 N.Y.S.2d 38, 39 (3d Dep't 2002) ("[I]n the absence of objective evidence establishing the aggravation as opposed to the underlying condition, plaintiffs' submission is insufficient to demonstrate serious injury under the permanent loss of use, consequential limitation of use or significant limitation of use categories."); *Montgomery*, 798 N.Y.S.2d at 18 (defendants were entitled to summary judgment where plaintiff's expert failed to give an "objective basis" for the conclusion that plaintiff's alleged limitations resulted from the accident sued upon, rather than from a prior fall, a prior car accident, or certain preexisting degenerative conditions). Given that Plaintiff "has provided no objective evidence addressing the pre-existing injuries," she falls short of her burden to rebut Defendants' prima facie case regarding her back injury. *Evans*, 978 F.

---

[9] In his report dated September 15, 2014, Dr. Zeren noted that Plaintiff "will attempt to get some medical records" from her 2002 motor vehicle accident. (Pl. Ex. 2 at 7). However, a review of Plaintiff's submissions makes clear that neither Dr. Zeren, nor any other doctor, analyzed Plaintiff's medical records relating to the 2002 motor vehicle accident before reaching their conclusions regarding causation.

Supp. 2d at 172; *see also Kim v. Rodriguez*, No. 14 Civ. 3799 (AMD)(AKT), 2016 WL 6581230, at *10 (E.D.N.Y. Nov. 4, 2016).

Accordingly, Plaintiff's claim that her back injury was a "serious injury" within the meaning of New York Insurance Law § 5102(d) is denied as a matter of law.

## ii. Neck, Shoulder and Knee Injuries

To establish her claim of a "serious injury" to her neck, knee and left shoulder, Plaintiff relies primarily on the results of her examination by Dr. Zeren, her chiropractor, and Dr. Cabatu.[10]

With respect to Plaintiff's neck, both Dr. Zeren and Dr. Cabatu found range-of-motion limitations in Plaintiff's cervical spine, *see supra* Section I.A., and Dr. Zeren noted spasms, and positive Cervical Compression, Jackson's Compression and Spurling's tests. Regarding the cervical-spine range-of-motion test, "[w]hile there is no set percentage for determining whether a

---

[10] Defendants argue that Plaintiff's reliance on Dr. Zeren and Dr. Cabatu's reports is "fatal" because the reports are not based on recent examinations. (Defs. Rep. at 2). As an initial matter, the Court notes that Plaintiff was last examined by Dr. Cabatu on December 13, 2016, (Pl. Ex. 4 at 7-10) -- the same month the Motion was filed -- and not, as Defendants contend, on March 27, 2015, (Defs. Rep. at 2). Accordingly, it is clear that Dr. Cabatu's findings are based on a recent examination and, therefore, constitute admissible evidence toward defeating the Motion. *Cf. Evans*, 978 F. Supp. 2d at 169 (noting that a doctor's affidavit must be "based on a recent examination of the injured plaintiff or an adequate explanation must be offered in the absence of a recent examination."). With respect to Dr. Zeren's report, his most recent examination of Plaintiff was on March 19, 2015, over a year prior to the parties' filings presently before the Court. New York state and federal courts have noted that "projections of permanent limitations based on examinations of plaintiff conducted . . . years before [the] summary judgment motion 'have no probative value *in the absence of a recent examination.*'" *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 605 (S.D.N.Y. 2004) (quoting *McKinney v. Lane*, 733 N.Y.S.2d 456, 457 (2d Dep't 2001)) (emphasis added). Here, Dr. Zeren explained in his affidavit that, after March 19, 2015, Plaintiff "went on to treat in another facility." (Pl. Ex. 2 at 3). Plaintiff's submissions make clear that she did seek continued subsequent treatment from other doctors -- including Dr. Cabatu, Dr. Moise and various physical therapists -- through the initiation of this lawsuit and the submission of the instant Motion. Accordingly, the Court finds that Dr. Zeren's findings, when considered with the more recent examinations that corroborate those findings, are admissible evidence toward defeating the Motion to the extent discussed herein. *See Casiano v. Zedan*, 887 N.Y.S.2d 613, 614 (2d Dep't 2009) (holding that a doctor's examination conducted "contemporaneous[ ] with the subject accident" that was corroborated by a "recent examination" to be "sufficient to raise a triable issue of fact as to whether the plaintiff sustained a serious injury . . . as a result of the subject accident."). Moreover, even if the Court were to accept Defendants' argument that Dr. Zeren's report has no probative value, the Court finds that the remaining evidence is sufficient to support the Court's ultimate conclusion.

limitation in range of motion is sufficient to establish serious injury, [ ] cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes." *Booth v. Melville*, No. 14 Civ. 7022 (CM), 2015 WL 7730931, at *11 (S.D.N.Y. Nov. 24, 2015) (internal citations omitted). Plaintiff's cervical-spine range-of-motion tests -- the last of which was conducted on December 13, 2016 -- revealed a percent loss that exceeds twenty percent. *See supra* Section I.A. Moreover, Dr. Cabatu's MRI of Plaintiff's neck indicated that Plaintiff sustained cervical radiculopathy, disc herniation and disc bulging. (Pl. Opp. at ¶ 44; Pl. Ex. 4; *see also* Pl. Ex. 5). Additionally, Dr. Moise reported that Plaintiff's diagnosis of cervical radiculopathy persisted even after administering the cervical epidural steroid injection on April 22, 2016. (Pl. Ex. 8). Dr. Zeren and Dr. Cabatu both certified that, in their medical opinions, these injuries were causally related to the Accident. (Pl. Ex. 2 at 5; Pl. Ex. 4 at 9). Taken together,[11] Plaintiff's medical evidence is suggestive of a "serious injury" and, thus, adequately rebuts Defendants' prima facie case and raises a genuine issue of material fact. *See, e.g., Luscier v. Risinger Bros. Transfer, Inc.*, No. 13 Civ. 8553 (PKC), 2015 WL 10847500, at *3 (S.D.N.Y. June 9, 2015) (citing *Servones v. Toribio*, 20 A.D.3d 330, 330 (1st Dep't 2005)) ("evidence of restricted range of motion 'raise[s] an issue of fact as to whether [plaintiff] suffered a significant limitation of a body function or system, and refute the physicians' statements that [plaintiff's] examinations revealed no significant limitation or disability.'").

Regarding Plaintiff's left shoulder, an August 14, 2015 MRI demonstrated extensive partial rotator cuff tear, a SLAP tear, a subchondral cyst formation, and joint effusion. (Pl. Ex. 6

---

[11] While courts have questioned range-of-motion tests in that they may rely on plaintiffs' subjective complaints, when they are supported by other objective medical evidence, they can be used to raise a genuine issue of material fact. *See Baytsayeva v. Shapiro*, 868 F. Supp. 2d 6, 23 (E.D.N.Y. 2012) (denying summary judgment where plaintiff submitted range-of-motion test results showing significant limitations in addition to three sworn affidavits diagnosing her with conditions related to traumatic brain injury, as well as objective evidence in the form of MRIs showing disc herniation and bulging).

at 2). Additionally, a left-shoulder X-ray taken on March 30, 2015 indicated "at least grade II separation of the acromioclavicular joint." (Pl. Opp. at ¶ 47). Dr. Cabatu's left-shoulder range-of-motion test revealed that Plaintiff sustained a thirty percent loss in range of motion. (*Id.* at ¶ 57; Pl. Ex. 4 at 7). Additionally, at Plaintiff's December 13, 2016 examination, Dr. Cabatu reaffirmed that Plaintiff sustained a left-shoulder partial rotator cuff tear and a separation of the acromioclavicular joint. (Pl. Ex. 4 at 8). Dr. Cabatu opined that these injuries were a result of the Accident, and that any purported degeneration prior to the Accident was asymptomatic. (*Id.* at 9). Moreover, at Defendants' independent medical examination, Dr. Lager noted that it was in the realm of possibility that Plaintiff's shoulder injury was the result of a traumatic incident. (Defs. Ex. 11 at 9). The Court finds that this evidence is sufficient to rebut Defendants' prima facie case, and creates a genuine issue of material fact that is not ripe for summary judgment. *See, e.g., Yong Qin Luo*, 625 F.3d at 778 (finding that the plaintiff's subjective evidence, along with medical evidence demonstrating, *inter alia*, "a tear in the [plaintiff's] right shoulder," was "sufficient . . . to raise a question of fact issue as to serious injury pursuant to N.Y. Ins. Law § 5104(a).").

Finally, with respect to Plaintiff's knee, Dr. Zeren concluded that Plaintiff showed "traumatic injury to the left knee" after conducting a McMurray's Test which was positive on the left knee producing medial pain (Pl. Ex. 2 at 8). Dr. Cabatu conducted a left-knee range-of-motion test on December 13, 2016, which revealed that Plaintiff's flexion was 110 degrees with pain, as compared to a normal flexion of 135 degrees -- an 18.5% loss in range of motion. (Pl. Ex. 4 at 8); *see also supra* Section I.A. Dr. Cabatu concluded that Plaintiff sustained a "left knee strain/sprain . . . as a result of the [A]ccident of September 11, 2014." (Pl. Ex. 4 at 9). However, other than the results of Dr. Zeren's McMurray's Test and Dr. Cabatu's range-of-motion test,

Plaintiff does not propound any objective evidence to demonstrate that her left-knee injury may be deemed a "serious injury." Absent additional objective evidence, the Court finds that Dr. Zeren's conclusory statement that Plaintiff suffered "traumatic injury to the left knee" and the results of Dr. Cabatu's range-of-motion test, also unsupported by corroborating objective medical evidence, are insufficient to rebut Defendants' prima facie case.[12] *See Booth*, 2015 WL 7730931, at *12 (granting a defendant's motion for summary judgment where the examining doctor "did not indicate whether Plaintiff had any subjective control over the results of the tests" and plaintiff did "not submit[] any objective evidence that she suffered a significant limitation to her . . . left knee."); *see also Jones v. United States*, 408 F. Supp. 2d 107, 121-22 (E.D.N.Y. 2006) (concluding that where plaintiff had control over his range of motion, a range-of-motion test was insufficient to raise a genuine issue of fact when MRIs did not show further aggravation of degenerations and injuries); *Hodder*, 328 F. Supp. 2d at 355 (where doctor did not describe whether the tests to determine the limitation to plaintiff's range of motion were subjective for plaintiff, and there was no other objective medical evidence of abnormalities, range-of-motion test results were held insufficient to raise a genuine issue). Moreover, a review of the medical evidence provided suggests that Plaintiff sustained nothing more "than a . . . minor, mild or slight limitation of use" to her knee. *Ventra*, 121 F. Supp. 2d at 333. Accordingly, Plaintiff's claim that she sustained a "serious injury" to her left knee as a result of the Accident is denied as a matter of law.

Based on this analysis, the Court concludes that the evidence of Plaintiff's neck and shoulder conditions is sufficient to support a jury finding that the injuries complained of are

---

[12] The Court also notes that Dr. Cabatu's range-of-motion test reveals that Plaintiff's loss in her left-knee range of motion was 18.5%. (Pl. Ex. 4 at 8); *see also supra* Section I.A. This falls short of the twenty-percent threshold that courts consider significant for purposes of summary judgment. *See Booth*, 2015 WL 7730931, at *11.

"serious injuries" within the meaning of New York Insurance Law § 5102(d). However, the dearth of evidence relating to Plaintiff's knee injury renders her claim insufficient to survive Defendants' motion for summary judgment.

## 2. 90/180 Category

Plaintiff does not raise a triable issue of fact regarding whether her injury was serious under the 90/180 day category. Plaintiff returned to work approximately three weeks after the Accident, and noted that she continued to "do the same things" at work that she did prior to the Accident. (Gil Tr. at 104). While Plaintiff alleges that she had difficulty completing household chores, driving long distances, lifting certain heavy items, and walking on stairs, (*id.* at 105-107), these activities "do not constitute substantially all of the Plaintiff's normal activities for 90 of the first 180 days after the accident. Indeed, rather than limiting h[er] normal activities to a great extent it appears to the Court that the Plaintiff's injuries only caused h[er] to suffer a slight curtailment to h[er] usual activities." *Evans*, 978 F. Supp. 2d at 167 (internal quotations omitted); *see also Berk v. Lopez*, 718 N.Y.S.2d 332, 333 (1st Dep't 2000) (quoting *Szabo*, 267 A.D.2d at 135) ("There is no evidence that plaintiff's injuries prevented her from performing her professional duties; her need to relieve pain by lying on the floor of her office . . . or leaning against the wall during business meetings falls far short of satisfying the statutory threshold."); *Murphy v. Arrington*, 295 A.D.2d 865, 867 (3d Dep't 2002) (finding insufficient proof to demonstrate that plaintiff police officer, who was dragged by a car, sustained a serious injury under the 90/180 category where he missed only six weeks of work after the accident and was put on light duty assignment for another six weeks). Moreover, the Court notes that in a self-assessment questionnaire dated September 14, 2014 -- three days after the Accident -- submitted to Dr. Zeren, Plaintiff herself indicated that she could, *inter alia*, "lift heavy weights, without

extra pain . . . look after [herself] normally without causing extra pain . . . do as much work as [she] want[s] to . . . [and] engage in all of [her] recreational activities." (Pl. Ex. 2 at 17).

Accordingly, Plaintiff's claim that she suffered a "serious injury" under the 90/180 category is denied as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is granted in part and denied in part. Plaintiff's claims under the 90/180 category and those relating to a permanent consequential or significant limitation to her back and left knee are dismissed as a matter of law. The claims relating to a permanent consequential or significant limitation to Plaintiff's neck and shoulder remain. The Clerk is respectfully requested to terminate the pending motion. (Docket No. 34).

Dated: September 14, 2017
White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge